# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

GEORGE W. PITTS, JR.,       :
                       :
        Petitioner,      :
                       :
v.                     :       CASE NO. 4:09-CV-142-CDL-GMF
                       :
BELINDA DAVIS,        :        28 U.S.C. § 2254
                       :       Habeas Corpus Petition
        Respondent.     :

## <u>REPORT AND RECOMMENDATION</u>

On May 19, 2004, Petitioner Pitts was convicted by a jury in Chattahoochee County of rape, kidnapping with bodily injury, aggravated child molestation, aggravated battery, aggravated assault, and enticing a child for indecent purposes. (R-18-10, p. 117). At sentencing, the court determined that Petitioner's conviction for enticing a child for indecent purposes merged with his conviction for kidnapping. *Id.* at 130. Petitioner received consecutive life sentences for rape and kidnapping with bodily injury, a consecutive twenty (20) year sentence for aggravated child molestation, and concurrent twenty (20) year sentences for aggravated assault and aggravated battery. *Id.* at 133–34.

Petitioner filed a Motion for New Trial, which was denied after a hearing. (R-18-14). Petitioner then filed an appeal with the Georgia Court of Appeals. *Pitts v. State*, 287 Ga. App. 540, 652 S.E.2d 181 (2007). Petitioner's conviction for aggravated child molestation was vacated on appeal due to an error in the jury instructions; however, the remaining convictions and sentences were affirmed on September 13, 2007. *Id.* Petitioner filed a state habeas corpus petition on June 2, 2008, in Lowndes County. (R-17-2, p. 2). The case was

transferred to Dooly County on December 15, 2008, and dismissed without prejudice on February 11, 2009. *Id.* Petitioner re-filed his state habeas petition in Dooly County on February 24, 2009. (R-18-2). After a hearing, the state habeas corpus court denied relief on June 5, 2009, finding that Petitioner's claims were procedurally defaulted. (R-18-16). On November 2, 2009, the Georgia Supreme Court denied Petitioner's application for probable cause to appeal. (R-18-17). Petitioner filed the current petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 on November 12, 2009. (R-1). Respondent filed her Answer/Response on March 23, 2010. (R-17). On April 2, 2010, Petitioner filed: 1) a Brief in Support of his 28 U.S.C. § 2254 Habeas Corpus Petition (R-19); 2) an Answer/Response to Respondent's Answer-Response (R-19-3); and 3) a Brief in Support of Petitioner's Answer/Response to Respondent's Answer/Response (R-19-2).

## **Standard of Review**

As amended April 24, 1996, by the Anti-terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254 presently provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment

of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
(A) the claim relies on –
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.

In *Williams v. Taylor,* 529 U.S. 362 (2000), the United States Supreme Court set forth the present standard of review for claims adjudicated on the merits in state courts as established by the AEDPA in regard to state prisoner's applications for a writ of habeas corpus in the federal district courts, stating:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that
(1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or
(2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412.  Justice O'Connor, writing for the majority of the Court,  added that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.  In that regard, Justice O'Connor also concluded:

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 411.

## Petitioner's Habeas Claims

Petitioner sets out six grounds for relief in his original petition, contending that his "due process rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. and State [C]onstitution were violated." (R-1, pp. 7-14).  In Ground One,  Petitioner argues actual innocence. (R-1, p. 7).  In Grounds Two through Five, Petitioner argues that there was insufficient evidence to convict him on each individual count.  *Id.* at 9-13.  In Petitioner's final contention of his habeas petition, Ground Six, Petitioner alleges that the trial judge was biased.  *Id.* at 14.  Additionally, Petitioner argues that the procedural bar should not apply because he is actually innocent and that his petition should be granted to stop a miscarriage of justice.  Petitioner set forth a new allegation in his Briefs/Responses to Respondent's Answer/Response. (R-19, R-19-2, and R-19-3).  In these documents, Petitioner contends that the state habeas court erred when it failed to show findings of facts and conclusions of law pursuant to O.C.G.A. § 9-14-49, in its final order.  *Id.*

## **Statement of Facts**

The Georgia Court of Appeals determined the following to be findings of fact:

> Viewed in the light most favorable to the jury's verdict, the record shows that, in the early morning hours of July 15, 2003, Pitts abducted his girlfriend's 15-year-old daughter from her bedroom, preventing her from screaming by putting a rag soaked with corrosive cleaning solution inside her mouth. Pitts bound the victim's hands and legs, put her in his van, and drove her to a rural wooded area. Pitts raped the victim in the back of the van. He then dragged her out of the van, tried to cut her throat, repeatedly stabbed her with a knife, and told her he was going to kill her. After stabbing her, Pitts went back to the van and got a metal, hammer-like tool and started hitting the victim's head and body while telling the victim to die. When the victim closed her eyes and pretended to be dead, Pitts ran back to the van and quickly drove away.
>
> Although the victim was seriously injured and her hands were still tied behind her back, she was able to get up, walk to a road, and scream for help. A man and his wife were driving by and saw the victim staggering in the road. They stopped to help, and the man pulled the victim to the side of the road and called 911. The victim told the couple that "George Pitts" had raped her and caused her injuries. Coincidentally, the man who stopped to provide assistance was related to George Pitts and, although he and his wife knew the victim, they did not initially recognize her because her face was very bloody and swollen. After the victim was placed in the ambulance, she told rescue personnel that "George Pitts" had raped and assaulted her. The victim was hospitalized for treatment of severe injuries, including multiple stab wounds in the neck and back, a blunt force trauma head wound, and burns to her face and mouth.

*Pitts v. State*, 287 Ga. App. 540, 541, 652 S.E.2d 181 (2007). Said facts are entitled to a

presumption of correctness under 28 U.S.C. § 2254(e)(1). "Significantly, AEDPA codifies

a presumption that the factual findings of state courts are correct, which may be rebutted

only by clear and convincing evidence." *Dill v. Allen,* 488 F.3d 1344, 1354 (11th Cir. 2007)

(citing 28 U.S.C. § 2254 (e)(1)), *cert. denied,* 552 U.S. 1043 (2007). This presumption

applies to fact finding made by both state trial courts and state appellate courts. *Id.*

## DISCUSSION

### A.     Procedural Default

Respondent argues that all six of the grounds were found to be procedurally defaulted

by the state habeas court, and that this Court should defer to that ruling and decline to review

the issue on its merits. (R-17-2). The Eleventh Circuit Court of Appeals has held that "[a]

state habeas corpus petitioner who fails to raise his federal claims properly in state court is

procedurally barred from pursuing the same claim in federal court absent a showing of cause

for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir.

1999) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). "[P]rocedural default can arise in

two ways. First, where the state court correctly applies a procedural default principle of state

law to arrive at the conclusion that petitioner's federal claims are barred, *Sykes* requires the

federal court to respect the state court's decision." *Bailey*, 172 F.3d at 1302 (citing *Atkins

v. Singletary*, 965 F.2d 952, 956 (11th Cir. 1992), cert. denied, 515 U.S. 1165 (1995); *Meager

v. Dugger*, 861 F.2d 1242, 1245 (11th Cir. 1988)). "Second, if the petitioner simply never

raised the claim in state court, and it is obvious that the unexhausted claim would now be

procedurally barred due to a state-law procedural default, the federal court may foreclose the

petitioner's filing in state court; the exhaustion requirement and procedural default principles

combine to mandate dismissal." *Bailey*, 172 F.3d at 1303 (citing *Snowden v. Singletary*, 135

F.3d 732, 737 (11ᵗʰ Cir. 1998), cert. denied. 525 U.S. 963 (1998)) (additional citations omitted).

Although Petitioner raised the above enumerated issues in his state habeas corpus proceeding (R-18-2, 18-3), a review of the record reveals that Petitioner failed to raise any of his habeas corpus issues on direct appeal (R-18-4, 18-5). In the case at bar, the state court applied a procedural default principle of state law to arrive at the conclusion that Petitioner's federal claims were defaulted under O.C.G.A. § 9-14-48(d). (R-18-6). A federal court is barred from a review of a state prisoner's federal claims where there is a failure to comply with an independent and adequate state procedural rule, unless the prisoner can show either 1) cause for the default and actual prejudice growing out to the alleged violation of federal law, or 2) a resulting fundamental miscarriage of justice if the federal court does not consider the claims. *Coleman v. Thompson,* 501 U.S. 722, 748 (1991); *Aldridge v. Dugger,* 925 F.2d 1320, 1327 (11th Cir. 1991).

The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497-98 (1991). To meet the "prejudice" prong required, a federal habeas petitioner generally must show that a cause or circumstance beyond his control worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *United States v. Frady,* 456 U.S. 152, 170 (1982).

A pro se petitioner is not exempt from the cause and prejudice requirement of

*Wainwright v. Sykes*. 433 U.S. 72. A mere possibility of actual prejudice resulting from an error at trial will not waive the procedural bar where other substantial evidence of guilt is present. *Sykes,* 433 U.S. at 91. A petitioner's "failure to act or think like a lawyer cannot be cause for failing to assert a claim" since he has no constitutional right to counsel during habeas corpus proceedings. *Harmon v. Barton,* 894 F.2d 1268, 1275 (11th Cir. 1990) (citing *Smith v. Newsome,* 876 F.2d 1461, 1465 (11th Cir. 1989)); see *McCoy v. Newsome,* 953 F.2d 1252 (1992).

The record reveals that Grounds One through Six were raised by Petitioner in his state habeas application[1] filed in Dooly County. (R-18-2, R-1). In the state habeas corpus final order, it appears that Petitioner is presumed to have argued cause and prejudice as to all of his state habeas claims. (R-18-16). However, Ground Six (trial judge bias) is the only ground in which Petitioner actually alleged prejudice and it does not appear that cause was ever alleged by Petitioner. (R-18-2, pp. 12-14, R-18-3, pp. 9-11, and R-21-2, pp. 21-25). The judge in the state habeas corpus hearing gave Petitioner ample opportunity to argue his habeas petition (R-21-2, pp. 1-36), and asked Petitioner on multiple occasions if he had anything else he wanted to say or argue (R-21-2, pp. 21-25, 29-33 and 35). The state habeas

---

[1] Petitioner originally filed an Application for Writ of habeas corpus in Lowndes County (Case No. 08CVD13), but the application was transferred and then dismissed without prejudice when Petitioner was transferred to Dooly County. (R-18-2, p. 3). In the original Lowndes County petition, Petitioner alleged: 1) ineffective assistance of appellate counsel; 2) a violation of due process of law in that the State failed to prove each and every essential element of his offenses; 3) the court erred in sentencing; and 4) a violation of due process of law in that the State failed to prove venue for the kidnapping offense. *Id.* Upon thorough inquiry by the state habeas court at the evidentiary hearing, Petitioner expressly waived his previous claims and stated he only wanted to proceed on the six (6) new claims. (R-21-2, pp. 8-13).

judge also specifically asked petitioner about the alleged harm related to Ground Six. (R-21-2, pp. 24-25). Thereafter, in the state habeas corpus final order, the judge found:

> [T]he petitioner could have raised all of his alleged grounds in his appeal. However, this Court finds that the petitioner did not do so. Additionally, this Court finds that the petitioner has not shown sufficient cause or prejudice to warrant this Court to overlook any default from failing to raise these issues on appeal. Therefore, this court finds that grounds one through six of the petition are procedurally defaulted.

(R-18-2, pp. 3-4). The same standard as noted above in *Coleman*, is applicable here. The state habeas court correctly determined that all six of Petitioner's claims were procedurally barred under O.C.G.A. §9-14-48(d) and *Black v. Hardin*, 255 Ga. 239, 336 S.E.2d 754 (1985), as Petitioner failed to raise the issue post-trial and on direct appeal and failed to show cause and prejudice for the default. (R-18-6, pp. 3-4).

## B. Actual Innocence/Miscarriage of Justice

The review does not end with cause and prejudice, however, as Petitioner also argues that the state habeas court erred when it failed to address Petitioner's "miscarriage of justice" argument. (R-19, p. 8). If a habeas petitioner cannot escape the procedural default doctrine through showing cause for the default and prejudice, he may circumvent the requirement in specific instances by establishing a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). A fundamental miscarriage of justice has occurred when a court finds that a constitutional violation has probably resulted in the conviction of an innocent person. *Murray*, 477 U.S. at 496. This alternative method requires a colorable showing of **actual innocence**, in other words, a showing that no reasonable juror would have

convicted him in light of the newly discovered evidence of innocence. *Schlup*, 513 U.S. at 316, 324-27 (emphasis added).

Petitioner listed Ground One as Actual Innocence and argued the same facts supporting this claim as Grounds Two through Five, his claims of insufficiency of the evidence. (R-1, R-19). However, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). There is no freestanding claim of actual innocence. *Id*. at 404-405. Rather, actual innocence is part of the miscarriage of justice exception. *Id*. Thus, the allegations of Ground One will be considered as additional argument regarding Grounds Two through Five. Although the terms are sometimes used interchangeably in case law, to limit confusion in this recommendation the term "miscarriage of justice" will be used hereafter to refer only to the overriding concept of the exception to a procedural bar in habeas cases. The term "actual innocence" will be used to refer only to the element of factual innocence.

The record shows that the state habeas court took testimony from Petitioner regarding the miscarriage of justice exception in his hearing. (R-21-2). The state habeas court clearly found that Petitioner failed to show any cause or prejudice which would warrant an exception to procedural default. (R-18-6, p. 4). Although the state habeas court cited cases that discussed the miscarriage of justice exception, it did not specifically address the exception, or any of its separate elements, in its final order. *Id*. Under 28 U.S.C.A. §22554(d), if an issue was raised before the state court, but not adjudicated, then the federal

10

habeas court must resolve the claim *de novo*. See *Gary v. Schofield*, 336 F.Supp. 2d 1337, 1348-49 and 1379. (M.D. Ga. 2004). Therefore, Petitioner's claims regarding the miscarriage of justice exception will be reviewed *de novo*.

As to Grounds One through Six[2], Petitioner argues that he did not commit the crimes and that his petition should be granted to "correct a miscarriage of justice and to correct a fundamentally unjust incarceration." (R-1 and R-19). Because Petitioner uses some of the same factual allegations to support multiple grounds, this recommendation addresses each of the allegations one time instead of multiple times by enumerated Ground.

### Petitioner's Allegations

A. Rape

Petitioner argues that the State failed to prove an essential element of the offense of rape because the paramedic who checked the victim at the scene did not find any injuries to her genital area. (R-19, p. 14). Petitioner also argues that there was insufficient evidence to convict him of rape because the paramedics, nurse, and Emergency Room doctor testified that "no rape occurred" (R-1, p.8-9), and that the aforementioned witnesses did not find any evidence that a rape occurred even though there was testimony from Dr. Williams that the assault was aggressive (R-1, p. 9 and R-19, pp. 8, 14-15).

---

[2] Petitioner adds "miscarriage of justice" to the very last sentence of Ground Six in his brief in support of his federal habeas petition, filed after Respondent's Brief. (R-19, p. 25). This is the very first time that Petitioner has mentioned "miscarriage of justice" in relation to this ground. Petitioner did not argue it in his state habeas petition (R-18-2, pp. 12-14), he did not argue it in his brief in support of his state habeas petition (R-18-3, pp. 9-11), he did not argue it in his state habeas hearing (R-21-2), nor did he argue it in his federal habeas petition (R-1, p. 14). Nonetheless, it will be included in this discussion.

"To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Not only has Petitioner taken great liberty with the facts[3] he cites to support his petition, his actual innocence/miscarriage of justice arguments do not contain any "new evidence" as required by the credibility test in *Schlup*.

Furthermore, Petitioner's allegations regarding the insufficiency of evidence for his conviction of rape are legally incorrect. In the State of Georgia the crime of rape is complete when a person has carnal knowledge of a female forcibly and against her will. O.C.G.A. § 16-6-1. Vaginal trauma, physical injury, and the presence of semen are not elements of the offense of rape and are therefore, not necessary for a conviction. *Skipper v. State*, 257 Ga. 802, 804, 364 S.E.2d 835 (1988); see also *Searcy v. State*, 158 Ga. App. 328, 280 S.E.2d 161 (1981).

B. Lack of Evidence

---

[3] Neither the paramedic (R-18-6, pp. 46-50, Trial Transcript pp. 202-06), the trauma nurse (R-18-6, pp. 56-78, Trial Transcript pp. 212-34), nor the ER physician testified that the victim had not been raped. In fact, the trauma nurse did not give any testimony regarding the victim's genital area or physical evidence of a sexual assault. (R-18-6, pp. 56-78, Trial Transcript pp. 212-34). The paramedic stated that he did not notice any injuries to the genital area in his cursory exam and clarified on cross-examination by saying, "I saw no obvious bleeding, and that is all I look for." (R-18-6, 202-03 and 205-06). The ER physician, Dr. Andrew Williams, testified that he examined the victim for sexual trauma and did not find any trauma to the victim's introitus or labia. (R-18-7, p. 102-03, Trial Transcript pp. 385-86). Dr. Williams further testified that in his experience, it was not unusual to not find trauma after a rape or child molestation. (R-18-7, p. 103, Trial Transcript p. 386). Dr. Williams stated that both the presence of trauma and the presence of physical evidence are effected by the aggressiveness of the penetration, the environment in which the sexual assault takes place, and whether the perpetrator used a condom. (R-18-7, pp. 103-04, Trial Transcript pp. 386-87). Dr. Williams testified that his examination neither proved, nor disproved that a sexual assault occurred. (R-18-7, p. 109, Trial Transcript p. 392).

12

Petitioner argues that he is innocent and that there was insufficient evidence to support any of his convictions because: **1)** the evidence shows no sign of struggle in the house (R-1, p. 13, R-19, p. 11); **2)** the screen was off the victim's bedroom window and it contained an unidentified fingerprint (R-19, p. 19); **3)** the victim gave contradictory statements to detectives and at trial (R-1, p. 8, R-19, pp. 11-12 and 20); **4)** the victim took a suitcase with a change of clothes in it (R-19, p. 26); **5)** the "GBI crime lab found fresh tire tracks at the crime scene and made cast[s] and compared them to Petitioner['s] tires on the van and they did not match" (R-1, pp. 8-13, R-19, pp. 12-20); **6)** the GBI "swabbed Petitioner's van with Q-tip swabs and didn't find a trace of evidence" (R-1, pp. 8-13, R-19, pp. 12-20); **7)** there was no evidence of the chemical used to gag the victim found on the Petitioner (by way of burns), his clothing, or in his van (R-1, p. 13, R-19, pp. 12 and 20); and **8)** "the State failed to produce any witnesses from neighbors (sic) who would have seen or heard anything (sic) as this house is not in a secluded area" (R-19, p. 11).

Petitioner again takes liberty with the testimony in the case[4]. "Actual innocence" means factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339

---

[4] There was no evidence or testimony that the victim "took a suitcase with a change of clothes in it." (R-19, p. 26). The victim testified that she packed the bag to go on a trip with her Aunt and that she didn't know how the bag got to the crime scene (R-18-6, p. 115, Trial Transcript p. 271), unless the Petitioner put it there (R-18-7, pp. 28-29, Trial Transcript 311-12). Petitioner states that the casts of the tire impressions and the tires on Petitioner's van did not match. (R-1, R-19). Testimony from Brian Hargett, Assistant Manager of the GBI Crime Lab, stated that three of the vans' tires were consistent with the three plaster casts in brand, make, model, and wear pattern. (R-18-8, pp. 110-138, Trial Transcript pp. 556-84). Mr. Hargett testified that the Petitioner's tires could have made the impressions. *Id*. Mr. Hargett testified that he could not give the highest level of identification, an exact match, because there were no random or accidental markings in the tires or impressions. *Id*.

(1992). Although Petitioner tacks "miscarriage of justice" onto each allegation, these allegations do not show or even point to "new evidence not presented at trial" of Petitioner's factual innocence. Rather, the allegations argue the legal sufficiency of Petitioner's convictions. Therefore, the enumerations do not pass the credibility test as stated above in *Schlup*.

Additionally, these allegations have no legal basis. Petitioner's enumerations argue that the state failed to produce any witness or evidence to substantiate the allegations of a victim who was not credible. (R-19). In *U.S. v. Parrado*, the appellants claimed that the evidence was insufficient because the government's case consisted of agent testimony only instead of "more reliable forms of evidence such as videotapes and recordings." 911 F. 2d 1567, 1570-1571 (11th Cir. 1990). The Eleventh Circuit Court of Appeals found this argument to be without merit, stating that "[w]hile such evidence may serve to enhance the government's case, it is by no means required and appellants cite no authority to support their position." *Id.* The court concluded its discussion of this issue by stating, "[t]he jury apparently found the agents' testimony credible" and "[c]redibility determinations are the exclusive province of the jury." *Id.*, (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981)) (jury entitled to believe the government's witnesses even if they consist of "an array of scoundrels, liars and brigands").

In the case at bar, the trial jury was properly charged on credibility. (R-18-10, pp. 96-97, Trial Transcript pp. 751-752). After having the opportunity to see and hear testimony from all of the witnesses, to hear argument from counsel, and to note any evidence that might

14

have been missing, the trial jury found the victim credible and convicted Petitioner on all counts. "Credibility decisions are the exclusive province of the jury." *United States v. Jones*, No. 08-16999, 2010 WL 1254351, *16 (11th Cir. 2010) (citing *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997)). When examining sufficiency of the evidence, said evidence must be "sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt. All credibility choices must be made in support of the jury's verdict." *Jones*, 2010 WL 1254351, * 15, (quoting *United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004)) (additional citations omitted). After a thorough review of the entire trial transcript, the victim's allegations appear credible and supported by the evidence presented at trial.

C. Alibi Witnesses

Petitioner argues that there were two witnesses who could and/or would have testified that no kidnapping occurred, but that the trial court would not allow them to testify. (R-1, pp. 8 and 13, R-19, pp. 11, 19 and 20). The witnesses to which the Petitioner refers are the two year old and eight year old brothers of the victim who were present at the house when the kidnapping occurred. Even assuming Petitioner's testimony at trial about his time line to be true, it would be factually difficult for the boys to establish any kind of alibi for the Petitioner because they could not account for all of his time that morning. The petitioner testified that he left the boys alone at the house twice that morning, one time for at least 45 minutes, and he testified that the younger child was still asleep when he left. (R-18-9, p. 7-24, Trial Transcript pp. 611-28). More importantly, there is nothing in the record that

indicates that the Petitioner or defense counsel ever attempted to call either boy to the stand as a witness and was denied the opportunity by the court. (R-18-8 and R-18-9). Thus, this argument is without merit.

D. Trial Court Bias

In Ground Six, Petitioner alleges several instances of trial court bias. (R-1, p. 14 and R-19, pp. 21-25). Petitioner argues that the bias resulted in a denial of due process and a miscarriage of justice. *Id.* In his first and second allegations under Ground Six, Petitioner claims the trial judge showed bias and committed reversible error when it refused to allow the Petitioner to bring in prior difficulties of the victim to show she was of a generally violent, confrontational nature. (R-19, p. 22). However, defense counsel specifically stated in his argument to the trial court that he did not want to use the victim's juvenile record "to show prior difficulties that the alleged victim may have had with other persons, nor to show that she is a person of a generally violent and confrontational character." (R-18-7, p. 16, Trial Transcript p. 300). Therefore, these allegations are without merit.

In his third and fourth allegations under Ground Six, Petitioner argues that the trial court showed bias to defense counsel by allowing GBI Special Agent Jeff Gordy to testify, over objection, to similarities between Bahia seeds found on the victim and Petitioner's van, and a leaf found on Petitioner's clothing and at the crime scene. A study of the trial transcript shows that Petitioner's trial counsel did not object to testimony from Agent Gordy regarding the Bahia-like seeds or the leaf. (R-18-8, pp. 29-30, 57, 60-63, and 67-73, Trial Transcript pp. 475-76, 503, 506-09, and 513-19). Petitioner's trial counsel only objected to

16

the entry of the seeds and leaf themselves, State's Exhibits 41 and 43, into evidence. *Id*. Agent Gordy testified as to why he collected the seeds and leaf from Petitioner and his van and stated that they appeared to be consistent and/or similar to Bahia grass and leaves found at the crime scene. *Id*. Agent Gordy admitted that he was not an expert on grass. (R-18-8, p. 57, Trial Transcript p. 503). O.C.G.A. § 24-9-65 states, "[w]here the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissable." Agent Gordy did not give an opinion on the ultimate decision of guilt or innocence, but merely relayed his observations and findings of physical evidence from Petitioner's person, Petitioner's van, and from the crime scene. As this testimony was properly allowed under Georgia law, its admission fails to show any bias on the part of the trial court. Therefore, these allegations are without merit.

In his fifth allegation, Petitioner argues that the trial court showed bias when it allowed a picture of a partial tire track to be entered into evidence over defense counsel's objection. (R-19, p. 23). Petitioner further argues that GBI Agent Jeff Gordy should not have been allowed to testify that the partial tire track matched the odd tire on the van. *Id*. Agent Gordy testified that while examining the Petitioner's van, he noticed that Petitioner had three matching tires and one odd tire. (R-18-8, pp. 75-82, Trial Transcript pp. 521-28). Agent Gordy testified that he returned to the crime scene to determine if he could find any tire impressions that matched the odd tire. *Id*. Agent Gordy stated that he found an odd tire

design in another area, but was only able to capture a small section because the rear tires had run over the impression. *Id*. Agent Gordy testified that the small portion of odd tire impression was "very, very similar" to the odd tire found on Petitioner's van. *Id*. Agent Gordy did not testify that the tires were a match. *Id*. As stated above, under O.C.G.A. § 24-9-65, a witness is allowed to give his opinion or belief and his reasons for believing such. Defense counsel did not object to the substance of Agent Gordy's testimony regarding the odd tire impression, the admission of the picture of the partial tire track, or the video tape showing the partial tire track. (R-18-8, pp. 78-81, Trial Transcript pp. 524-27). Defense counsel's only objection during this questioning referred to the witness' narrative nature of the answers as the videotape was played, not the substance of his answers. *Id*. Therefore, this argument fails to show any bias on the part of the trial court and is without merit.

In his sixth allegation of Ground Six, Petitioner argues that the trial exhibited bias when he asked the State about soliciting testimony on the "cardboard laying in the van" in front of the jury. (R-19, p. 23-24). The trial transcript clearly shows that the colloquy cited by Petitioner took place during a bench conference[5], outside the presence of the jury. (R-18-8, p. 109, Trial Transcript p. 555). Furthermore, the trial court's question appears more to indicate interest or curiosity than bias. The State informed the trial court that no such evidence was recovered before he recommended that she try and "slip" the question in to the

_____

[5] *Black's Law Dictionary* defines sidebar conference as "[a] discussion among the judge and counsel, usu[ally] over an evidentiary objection, outside the jury's hearing. – Also termed *bench conference*." 1414 (8th ed. 2004).

agent. *Id*. When defense counsel asked if the judge had any advice for him, the judge said "[g]ive the same advice to you." *Id*. This response could very well indicate that the trial judge thought the information was important for both sides and that defense counsel should ask the question if the State did not. The Petitioner has failed to show bias on the part of the trial court in this colloquy.

In his seventh allegation of Ground Six, Petitioner argues that the trial judge exhibited bias "when he denied defense counsel['s] expert witness Dr. Andrew Williams to testify on gang related injuries without disqualifying him as an expert witness." (R-19, p. 24). The *Wolfe* line of cases referenced by defense counsel during the Motion in Limine, dealt with the admission of evidence concerning a <u>defendant's</u> affiliation with a gang. *Wolfe v. State*, 273 Ga. 670, 544 S.E.2d 148 (2001) (emphasis added). In that case, the court determined that gang affiliation was relevant to show motive. *Id*.

In *Harris v. State*, Harris argued that the trial court erred when it admitted evidence of gang affiliation of the defendant but excluded gang affiliation evidence relating to the victim. 298 Ga. App. 708, 710-11, 680 S.E.2d 693 (2009). In that case the trial court listened to a proffer but determined "that the evidence did not establish the gang membership of the victim or witnesses at the time of the crime." *Id*. In their holding, the Georgia Court of Appeals thoroughly discussed the case law on this issue, stating:

> [O]n reviewing the question of whether a victim's gang affiliation is admissible at trial, our Supreme Court has held that although evidence of the victim's specific acts of violence against third persons when the defendant is claiming justification is admissible, "[m]ere membership in a gang is not

19

a specific act of violence." *Kolokouris v. State*, 271 Ga. 597, 600(4), 523 S.E.2d 311 (1999). Therefore, such evidence is not admissible or relevant. *Id*. The Court also pointed out that "the victim's character is rarely relevant for any purpose in a criminal proceeding." *Id*. (additional citations omitted).

*Id*. at 711. The Georgia Court of Appeals thereafter held that the trial court did not abuse it's discretion in excluding evidence of gang affiliation of the victim. *Id*.

In the case at bar, not only did the Petitioner not claim justification, he claimed he was not the perpetrator. Nor did Petitioner present any evidence to substantiate his claim that the victim was affiliated with a gang. (R-18-5, pp. 17-28, Trial Transcript pp. 17-28). Defense counsel did not argue that anything in the victim's juvenile record evidenced such, but rather argued that he should be allowed to discuss any prior incidents "to show that [the victim] could have been injured other than by the acts of the defendant in this case." (R-18-5, p. 24, Trial Transcript p. 24). Defense counsel further stated that "[t]he gang angle came from an interview that [he] had with one of [the State's] witnesses, Dr. Andrew Williams, the emergency room physician, who said to [him] that these injuries are consistent with gang initiation." (R-18-5, p. 26, Trial Transcript p. 26). Defense counsel proffered that he believed Dr. Williams would testify that during his experience as an emergency room physician he had learned (from taking medical histories) that people either get "beaten into" or "sexed into" a gang, and that the victim's head and shoulder injuries, particularly that they appear on the back part of the body, are consistent with previous clinical presentations that he had seen of people beaten into a gang. *Id*. at 26-27. The trial court asked, "[y]ou expect the doctor to testify that after examining trauma to the victim that it was a gang initiation?"

*Id*. at 27. To which defense counsel responded, "I believe that the doctor will say that these are consistent with what he has seen clinically presented in the emergency room with being beaten into a gang." *Id*. The trial court found such to be inadmissible and would not allow the testimony, but did allow defense counsel to make an additional proffer at a later time. *Id*. "[T]he admission of evidence rests within the trial court's sole discretion." *Stewart v. State*, 210 Ga. App. 474, 477, 436 S.E.2d 679 (1993). There were no facts presented or foundation laid which warranted any such testimony and the defense was still allowed to argue that someone other than Petitioner committed the offenses against the victim. Therefore, the trial court did not abuse its discretion by granting the State's Motion in Limine and disallowing testimony of the physician on gang-related injuries.

"The *Schlup* Court stated that the petitioner must show constitutional error coupled with 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'" *Paschal v. Secretary Dept. of Corrections*, 2009 WL 3790308, * 3 (Nov. 9, 2009) (quoting *Schlup v. Delo*, 513 U.S. at 324). There was no constitutional error, as shown above. Moreover, Petitioner again fails to present any "new evidence not presented at trial" of his actual innocence which would meet the miscarriage of justice exception.

## C. Statement of Facts & Conclusions of Law

Petitioner set forth a new allegation in his Briefs/Responses to Respondent's Answer/Response. (R-19, R-19-2, and R-19-3). In these documents, Petitioner contends that the state habeas court erred when it failed to show findings of facts and conclusions of law

pursuant to O.C.G.A. § 9-14-49, in its final order and that this requires his petition to be granted. *Id.* The Eleventh Circuit Court of Appeals has held that errors raised by a petitioner which do not involve the reason for his confinement are not cognizable in federal habeas corpus petitions. *Quince v. Crosby*, 360 F.3d 1259, 1261 (11th Cir. 2004). Specifically, that Court held that:

> In *Spradley v. Dugger,* we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief. 825 F.2d 1566, 1568 (11th Cir.1987); *see also Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself."); *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"). Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief. *See Spradley,* 825 F.2d at 1568.

Petitioner's allegation regarding the state habeas court's final order is not a challenge to his conviction. This claim is clearly an attack on a proceeding collateral to his conviction and, therefore, not cognizable in habeas corpus. 28 U.S.C. § 2254; *Quince*, 360 F.3d at 1261 (11th Cir. 2004). Thus, this claim is also without merit.

## CONCLUSION

As to all six grounds, Petitioner has failed to establish cause for his failure to timely raise the issues or establish that a miscarriage of justice occurred which would excuse the

default on these claims. Thus, **Grounds One** through **Six** are procedurally barred and it is recommended that Petitioner is not entitled to relief on these grounds. Petitioner's claim regarding the Statement of Facts and Conclusions of Law in the final order of the state habeas court is not cognizable in a federal habeas and Petitioner is not entitled to relief of this claim.

WHEREFORE, IT IS HEREBY RECOMMENDED that Petitioner's Application for federal habeas corpus relief be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within FOURTEEN (14) DAYS after being served with a copy hereof.

**SO RECOMMENDED**, this 13th day of May, 2010.

**S/G. MALLON FAIRCLOTH**
**UNITED STATES MAGISTRATE JUDGE**

mZc